The Court

(Chase and Duvall
against the opinion of the chief judge) were of opinion the said transcripts were not legal evidence, they nothavingbeen acknowledged according to law; that they could not be legally offered to the court and jury for any purpose of proof, and that the jury, in forming their verdict, was not to notice those transcripts or their contents. To this opinion the plaintiff’s counsel excepted.
3d. For the 3d bill of exception, the plaintiff offered in evidence the two grants, the one for Shaw's Fancy, and the other for Shaw's Delight, granted to Christopher Shaw; that they are two of the tracts mentioned in the declaration, and it was admitted that the true location of the land called Shaw's Fnncy, included the whole of the tract called Shaw's Delight; that Shaw the grantee left two sons, Thomas, his eldest son, and Christopher, the younger son ; that Thomas died leaving a son named Christopher Durbin Shaw his heir. He also offered in evidence the will of the said Christopher, son of Christopher, the grantee ; that Ruth Bayes, one of the devisees therein named, intermarried with Robert Boyd; The transcript of the deed from the said Boyd and wife to George Harryman, the grandfather of the defendant, under which said George the said defendant claims : That after the death of Thomas Shaw aforesaid, the said Christopher Durbin Shaw lived on the land called Shaw's Fancy, until the date of the deed from him the said Christopher Durbin, *586 Shmv, to the said George Harryman : The transcript of the deed aforesaid, from the said Christopher Durbin Shaw to the said George Harryman : That the said Christopher Shazo, son of the patentee, lived on the land called Shazo’s Fancy some years before his death, and was living thereon until his death ; that the lands meant to be conveyed by the said deed from the said Christopher Durbin Shaw to the said George Harryman, though called Szvan’s Fancy and Swan’s Delight, were in reality the tracts called Shaw’s Fancy and Shaw’s Delight.
The plaintiff also offered in evidence theentries in the rent roll of lands situate in Baltimore county, preserved in the land-office, to wit:
“ 97 acres yly rent 3s. 10c/. Shaw’s Delight, surv. 15th June, 1688, for Christ, Shazo on the S. side of Middle River.
“ 48 a. Is, lid. George Harryman from Xphr. Durbin Shazo, 9th March, 1738.
“ 97 a. 3s. 10c/. Georgs Harryman from Robert Boyd and wife, 6th December, 1743.
" 100 a. 4s. Shaw’s Fancy surv. 10 Augt. 1680, for Xpher. Shazo on the W. side Middle River at bound Spanish Oak of the land called Hopewell.
“ 50 a. 2s. George Harryman from Xpher. Durbin Shazo, 9th March, 1738.
“ 100 a. 4s. George Harryman from Robert Boyd and wife, 6th December, 1743.”
That the said George Harryman, and those holding under him, have possessed the said land called Shaw’s Fancy ever since the said deeds were so executed, until the present time. That Richard Hoddy, the lessor of the plaintiff, before the commencement of this suit, married Alary, the daughter of the said Robert Boyd and Ruth his wife, and that the said Hoddy and wife live in the state of Virginia ; that the said Robert Boyd died in the same state six years past, and that the said Ruth his wife died about fifteen or sixteen years past.
*587 The defendant offered in evidence the grant of the tract of land called Shaw’s Fancy to the said Christopher Shaw ; that the said Shaw died leaving two sons, Thomas, the eldest son, and Christopher, the youngest. The grant of the land called Shaw’s Delight to the said Christopher Shaw the elder. That Christopher, the grantee of Shaw’s Privilege, was the brother of the said Thomas, and youngest son of Christopher the elder. The admissions of the plaintiff, that the said land called Shaw’s Privilege waslocated and contained within the lines and location of the land called Shaw’s Fancy. That Thomas Shaw died leaving an only son and heir at law Christopher Durbin Shaw ; that the said Christopher Durbin Shaw entered upon, held and had possession of part of the said land called Shaw’s Fancy, at the time Christopher Shaw had possession of part thereof. That George Harryman, more than fifty years ago, entered upon, held, used and claimed the said land called Shaxv’s Fancy as his own proper estate and right. The bond for the conveyance of the said land executed by Christopher Durbin Shaw, and conditioned for the conveyance of the said land George Harryman and his heirs, dated the 11th of February, 1737-8. That the said George Harryman entered upon, qccupied and was possessed of the whole of the said land called Shaw’s Fancy, and afterwards died so seised thereof, leaving George Harryman his eldest aou and heir at law. That the said George Harryman, the heir at law, after the death of his father, entered upon, and became seised of, the said land as the law required, and afterwards died so seised thereof, leaving William Harry-man, the defendant, his eldest son and heir at law, who, after the death of the said George Harryman, his father, last mentioned, as heir at law, entered upon the said land called Shaw’s Fancy, and hath ever since held and possessed the same, and is now in possession thereof, and is the defendant in the present cause.
Martin, (Attorney-General,) for the plaintiff.
It is equity and humanity to protect the rights of married women. The deed being a void deed cannot be argued from : the deed from Christopher Durbin Shaw is for one undivided moiety. This shows plainly what the one party meant to sell, and what the other meant to buy. Under this deed George Harry man was entitled to one moiety only. On the 11th of February, 1/39, Christopher Shaw made his will, and devised the other moiety to Ruth Bayes and John Ingle, to them and their heirs for ever ; and the will was proved the 3d of May, 1/39. The deed from Boyd and wife, dated in December, 1/42, to George Harryman, recites the devise from Christopher Shaw, and is for one half part, and recognises Christopher Shaw's right. Then George Harry man's right is good as long as Boyd lived, (and he died in 1/91,) and no longer.
There might have been a will from Christopher Shaw, senior, for there was no law at that time making it necessary to record wills. It may be said that this presumption is to defeat an ancient possession, but it is not so : it is to strengthen an ancient possession, a possession which all parties acknowledged; but, according to his title, the defendant’s possession ceased on the death of Boyd, and ours begins. For presumption to legalize *589 long possession, cites Helms's Lessee v. Howard, (October term, 1734,) and Lloyd v. Gordon, April term, 1789,) where a patent was presumed although against long possession, say fifty years. But the presuming the patent was to strengthen and legalize possession. In the case of Greenhawk and Wife's Lessee v. Cumberford, the defendant supported his title under a patent of 1762. The ejectment was brought about 1780. The defendant set up a title under a patent to A. Hutchings, dated in 1762. No patent could be found for the land for which the ejectment was brought. There was a certificate for Rigby, {the name of the land,) by which it appeared tha." the land had been surveyed in 1679 for John Wooters- Me conveyed it, in 1694, to Josiah Bradbury. A deed from Bradbury in 1735, was made to Thomas Hutchings for a moiety. In 1747 Thomas Hutchmgs died, and had lived on the land. He left a son named Thomas, his heir, who enlisted in the army in Braddock's war in 1756, and never returned. This Thomas left an only daughter, who married one Greenhawk before she was of age. A. Hutchings was the brother to Thomas. To get clear of the patent to A. Hutchmgs, it was necessary to presume a grant, and it was presumed; and it was presumed to show that the possessions were held under title, and not to destroy title.
*588 Whereupon the plaintiff’s counsel desired the court to declare to the jury their opinion, that on this evidence, if they believed the testimony given, they might and ought to presume a will or conveyance to have been executed by Christopher the grantee, under which his son Christopher, and his grandson Christopher Durbin, were entitled to the said land called Shaw's Fancy, as tenants in common, or as joint tenants, though no such deed or will was produced at the trial; and that the court would so direct the jury notwithstanding the evidence so offered by the defendant.
*589 So in the case at bar, the defendant being in under title until Boyd's death, the presumptions is not to destroy title-
Key, for the defendant.
In 1680 Christopher Shaw took up Shaw's Fancy ; he left two sons, Thomas and Christopher. In 1725 patent issued to Christopher the son, for the same land, called Shaw's Privilege ; Christopher Durbin Shaw is heir at law to Shard’s Fancy ; Christopher, the son, the patentee of Shaw's Privilege. The fact whether Christopher Shaw entered under the patent of 1725, or tin *590 dcr a deed to be presumed from his father, is for the jury to determine.
There is no evidence to show the assent of the heir at }aw t0 ^he entry of Christopher under the patent; and the bond from Christopher Durbin Shaw, in 1738, is for the whole. Reads the proprietary instructions and conditions of plantation of the 5th of April, 1684, 4th of December, 1696, and the 12th of April, 1712.

The Court

were of opinion that under the evidence given in this cause, they could not, in point of law, give the direction as prayed for by the plaintiff’s counsel, and did accordingly refuse to give the direction. To this opinion the plaintiff excepted.
In the course of the trial of the cause, Key, for the defendant, offered to read in evidence a copy of a deed, (the book in which it was recorded being lost,) dated in the year 1707, and which did not appear to have been acknowledged. He cited Esp. 747. 773. The act of 1715, c. 47. s. 6, 7. 2 Bac. Abr. tit. Evidence, 308, 309. The copy of the deeds appeared to be taken from Liber H. W. No. 1. and the clerk of Baltimore county, sworn as a witness, said, the hand-writing in which tW copy was made seems to be the same as the hand-writing in the record book, Liber H. W. No. 2.
The Court. The instrument offered not having been acknowledged, cannot be received in evidence. The defect cannot be cured by any of the acts of assembly of 1692, c. 30. 1699, c. 42. 1704, c. 24. or 1715, c. 47.
The plaintiff appealed to the court of appeals.
At June term, 1800, the court of appeals decided that.' the general court were right in their opinions contained in the first and third bills of exceptions. But, as to the *591 second, bill of exceptions, the court of appeals were of opinion, that the general court “ had a right to direct the jury that testimony, offered and admitted by the parties, was illegal and inoperative, the court of appeals being of opinion that they are not bound by the admission of the parties, when evidence is illegal; but the court of appeals were further of opinion that the acknowledgment of the two deeds, mentioned in the said bill of exceptions, were good and legal, and ought to have been read in evidence to the court and jury j for which error the said judgment is reversed.”